# BURSON *v.* VOGEL.

PATENTS; PRELIMINARY STATEMENTS; EVIDENCE; WITNESSES; REFRESH-
ING OF MEMORY; REDUCTION TO PRACTICE; INVENTION; CONCEAL-
MENT; PUBLIC USE.

1. The allegation in the preliminary statement of one of the parties to
an interference, not excepted to by the other party, that he had con-
structed an experimental machine on a given date, will, if not fol-
lowed by an allegation of a later date of actual reduction to practice,
entitle him to show that the making of the machine amounted to
an actual reduction to practice as of the date of its construction (dis-
tinguishing *Hammond* v. *Basch,* 24 App. D. C. 469); but he cannot
have the benefit of an earlier date than that alleged, no matter what
his evidence may show.   (Following *Lowrie* v. *Taylor,* 27 App. D. C.
522.)

2. The reading of entries in a diary kept in shorthand, showing dates and
memoranda of work done, is equivalent to the ordinary use of memo-
randa by a witness to refresh his memory.

3. The construction of a machine will not constitute reduction to practice,
where it appears that, after having been experimented with, it was
laid aside and partly dismantled, and that, although when produced
as an exhibit in an interference case it had all the necessary parts,
the important ones in the controversy were replacements.

4. A machine may be crude of construction, but if it contains all the es-
sential elements of the invention of the issue in an interference, and
its operation successfully demonstrates its practical efficacy and utili-
ty, reduction to practice is accomplished.   (Following *Coffee* v. *Guer-
rant,* 3 App. D. C. 497; *Norden* v. *Spaulding,* 24 App. D. C. 286;
*Gallagher* v. *Hein,* 25 App. D. C. 77; and *Lowrie* v. *Taylor, supra.)*

5. The mere fact that mechanical improvements in a machine, the con-
struction of which is claimed to constitute actual reduction to prac-
tice, may have been suggested and made in the course of its operation,
that tended to perfect its operation and increase its practical efficiency,
while the machine retained the essential elements of the invention
which it put in practice, will not impair the effect of the original
demonstration of utility, if satisfactorily established.

6. Invention consists of the conception of the idea and of means for putting it in practice and producing the desired result. Until the latter conception is complete and ready to be put in some practical form, there is no available conception of the invention within the meaning of the patent law. (*Following Mergenthaler* v. *Scudder,* 11 App. D. C. 264, and *Funk* v. *Haines,* 20 App. D. C. 285.)

7. Delay of an applicant for a patent for a knitting machine to file his application for about two years after reduction to practice, and use of the machine in his factory during that time, do not constitute such a concealment of the invention, after reduction to practice, as to subordinate his right to a later discoverer, where it appears it was not the policy of the applicant's company to patent machines used by it, and, also, that such later inventor himself did not apply for a patent for almost a year after reducing to practice. (*Citing Mason* v. *Hepburn,* 13 App. D. C. 86, and *Trissel* v. *Thomas,* 23 App. D. C. 219.)

8. Whether the use by one of the parties to an interference, of a machine embodying the invention of the issue, in his factory for more than two years before applying for a patent, amounted to such public use, within the meaning of sec. 4886, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 3382, as to bar his right to a patent, will not be considered in the interference, which involves priority of invention only. The question is one for the consideration of the Commissioner on the final allowance of a patent.

No. 417.   Patent Appeals.   Submitted March 15, 1907.   Decided April 2, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Reversed.*

The facts are stated in the opinion.

*Mr. A. O. Behel* and *Messrs. Meyers, Cushman, & Rea* for the appellant.

*Mr. Walter W. Calmore, Mr. E. T. Fenwick,* and *Mr. E. M. Kitchin* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving priority of invention of an improvement in singeing machines.

The issue is embraced in twenty-two counts, which show forth, in a machine for singeing stockings, a combination of rollers, the ending point of which is in proximity to the initial point, whereby the articles to be singed, mounted on stretching boards, are continuously advanced from the starting point to the ending point, and in their journey pass between gas or singeing jets; and a stripping device whereby the further motion of the board effects the withdrawal of the article stretched upon it, and returns the board to the point, where, having another article attached, it may be fed again to the machine for singeing and stripping.

For the sake of brevity, the following counts—1, 2, 11, 14, and 22—are extracted as fairly representing the issue:

"1. A finishing machine embodying stripping means, the articles to be treated being mounted on supports so as to be acted on by said means."

"2. In combination with means for treating tubular fabrics supported from within upon suitable formers, of means for carrying the said formers, with the articles to be treated, through the said treating means, and means for stripping the said articles from the formers."

"11. In combination with singeing means, of means for carrying the supports holding the articles to be singed through the said singeing means, means for returning the supports, and means for stripping the said articles from their supports on their return movement."

"14. In combination with means for singeing stockings or like articles mounted upon supports, of means for carrying the supports, with the articles thereon, through said singeing means, means for changing the direction of movement of the supports after they have passed through the singeing means, and means for returning the supports."

"22. In combination with means for singeing stockings or like articles mounted upon supports, of means for carrying the articles through the singeing means, an inclined belt located in the path of movement of the said supports for changing the direction of movement thereof, means for returning the supports to a point adjacent to the feed end of the machine, and means for stripping the articles from their support."

The application of Paul F. Vogel was filed May 28, 1902, and that of William Worth Burson April 17, 1903.

In his preliminary statement, Vogel alleged conception July 2, 1900, drawings made July 7, 1900, disclosure to others July 8, 1900, and that he embodied the invention in a full-size machine, which was completed about April 6, 1901, and operated successfully April 9, 1901. He also alleged the manufacture of machines for sale after September 22, 1903, under contract with manufacturers entered into in April, 1903.

Burson alleged conception in August, 1899, sketches December, 1899, but no model, and disclosure to others December 27, 1899. He also alleged that he constructed one experimental machine in January, 1901, and has since had constructed two machines containing the invention in controversy.

The Examiner of Interferences awarded priority to Burson. On appeal to the Examiners-in-Chief, that decision was reversed; and they were affirmed by the Commissioner, with final award to Vogel. From this decision Burson has appealed.

A preliminary question must be disposed of before passing to a consideration of the evidence relating to conception and reduction to practice of the invention of the issue.

The appellee contends that the allegation in the preliminary statement of Burson, to the effect that he constructed an experimental machine in January, 1901, does not amount to an allegation of a reduction to practice, and, hence, in respect of that machine and the two other machines thereafter constructed, to which no date is given, limits Burson to the date of his application as his first reduction to practice. We cannot concur in this view of the effect of the statement. It is not so precise as it might have been, and, if exception had been taken to it on

that ground *in limine,* its amendment might possibly have been compelled; at any rate, if unamended after exception, the limitation of its averments now insisted upon might reasonably be imposed.   Neither of the two decisions adverse to Burson is rested upon such limitation.

We do not regard the case, under the circumstances, as falling under the rule applied in *Hammond* v. *Basch,* 24 App. D. C. 469, 473.   In that case the statement alleged the construction of a "model" in May, 1900, and this was followed by the specific allegation of actual reduction to practice in February, 1901, through the completion and use of a full-size, operative device. The invention was a simple one, and the evidence tended to show actual reduction to practice of the alleged model.   But in view of the specific allegation of later reduction to practice in the statement, which remained unamended, it was held that the date thereof could not be carried back of the time alleged.   In taking his testimony, the opposing party had the right to assume that the model was what it was alleged to be, and nothing more. Here the party, after stating that he had made no model, alleged the construction of an experimental machine on a certain date, and did not follow it with an allegation of a later date of actual reduction to practice.   An experimental machine—and the first construction of a complicated device usually is—may be, according to the evidence relating to its construction and use, a mere unsuccessful and therefore an abandoned experiment, or, though crude in its construction, may furnish a satisfactory demonstration of its utility.   If, therefore, the evidence shall show that this experimental machine was successfully operated, Burson ought to have the benefit of it as of the date alleged.   He cannot, of course, have the benefit of an earlier date than that alleged, no matter what his evidence may show.   *Lowrie* v. *Taylor,* 27 App. D. C. 522, 523, and cases cited.

Without reviewing the evidence at length, we think it sufficient to show that Burson had a conception of the invention and disclosed it to others as early as the 1st of July, 1900.   His own testimony as to this is corroborated, and the entries in his diary, with this corroborating evidence, fix dates.   As the re-

citals in this diary seem to have been rejected by the Commissioner, we think it proper to say that we cannot agree with his conclusions. Burson is a man over seventy years of age, and appears to have kept a diary for fifty years, in which he made a daily record of events. There is nothing in the appearance of this diary to excite suspicion. The dates follow consecutively. It is true that the record is in shorthand, after the Pittman system; but it appears that interpretation thereof could be made with sufficient certainty by one skilled in that method. Having testified in regard to his conception and the work done therein, he read a number of entries from the diary, showing dates and memoranda of work done. We see no substantial difference between this and the ordinary use of memoranda by a witness to refresh his memory. While such testimony, uncorroborated by other witnesses, is not sufficient proof of the conception of an invention, we think it has sufficient corroboration in the testimony of Ziock, the superintendent of the factory, and Westberg, a carpenter, who worked on all of the machines of Burson.

Under the ordinary burden of proof imposed upon a junior party, we do not think the evidence sufficient to show that the experimental machine was successfully reduced to practice. It was evidently experimented with, but was afterwards laid aside and partly dismantled. When produced as an exhibit it had all of the necessary parts, but the important ones in this controversy were replacements. We are not satisfied with the evidence tending to show that the parts replaced were identical with those that had been removed. It was given some five years after the fact, and lacks certainty. The reduction to practice by the use of the experimental machine—No. 1—is, however, of no practical importance under the allegation of its construction in 1901. The proof shows, we think, that machines 2 and 3 were being constructed in December, 1900, and January, 1901, and were completed and tried during the latter month. This evidence, we think, shows a successful reduction to practice, at least during the early spring of 1901.

The Examiners-in-Chief held that the evidence relating to these two later machines was not sufficient to show reduction to

practice, and held that Burson must be confined, therefore, to the date of filing his application. They base their conclusion upon the evidence of Burson, who said, with apparent candor, that machine 2 required "considerable changing and bettering of different parts, all of which changes, of course, stopped the operation of the machine while said changes were being made. The machine which is called No. 3 was better constructed and ran better, but there were some changes and some interruptions in its work for some considerable time." They say: "If these machines had in January, 1901, the construction which they now have, they were, of course, reduction to practice as defined in the issue, but the testimony does not satisfy us that they were in the condition which they now are, at that date, or that they were successful in operation at that time." This conclusion ignores the further fact, testified to by Burson, that these changes were made in the line of better workmanship, and that substantially all the parts of. the first construction were retained. The resemblance between the new machines, and their resemblance to the first experimental machine, indicate the presence in the former of the essential elements of the issue; and the evidence of the two witnesses before referred to is to the same effect.

A machine may be crude in construction, but if it contains all the essential elements of the invention of the issue, and in its operation successfully demonstrates its practical efficacy and utility, reduction to practice is accomplished. *Coffee* v. *Guerrant,* 3 App. D. C. 497, 499; *Norden* v. *Spaulding,* 24 App. D. C. 286, 290; *Gallagher* v. *Hien,* 25 App. D. C. 77. 82; *Lowrie* v. *Taylor,* 27 App. D. C. 522, 526. The mere fact that mechanical improvements may be suggested and made in the course of operation, that tend to perfect the operation of the machine and increase its practical efficiency, while retaining the essential elements of the invention which it puts in practice, does not impair the effect of the original demonstration of utility, if established satisfactorily. Having found that Burson's evidence sufficiently established his conception about July 1, 1900, and reduction to practice as early at least as March 1, 1901, the burden was shifted to Vogel, the senior applicant.

The Examiner of Interferences awarded him July 8, 1900, as his date of conception. The Examiners-in-Chief held his evidence insufficient, and restricted him, both in respect of conception and reduction to practice, to his filing date. The Commissioner, agreeing with them in their conclusions as regards Burson's claims to conception and to reduction to practice, did not consider it necessary to pass upon Vogel's evidence, as his earlier filing date entitled him to the award of priority.

Vogel testified to his conception of the invention on July 8, 1900, and that he made a sketch showing the same on that date. No witness was produced who saw this sketch, and the only witness introduced to corroborate Vogel was one Loerding. His testimony was to the effect that a few days after July 4, 1900, Vogel came to witness, who was at work on a machine singeing stockings, and said the machine was not complete; that there ought to be an arrangement to strip the stocking and return the board to the man who put them on. He then, by using his hands and the edge of the table, removed a stocking and the board remained in his hand. No mechanism was described by which the desired result could be obtained. Invention consists of the conception of the idea and of means for putting it in practice and producing the desired result. Until the latter conception is complete and ready to be put in some practical form, there is no available conception of the invention within the meaning of the patent law. *Mergenthaler* v. *Scudder,* 11 App. D. C. 264, 276; *Funk* v. *Haines,* 20 App. D. C. 285, 288. Failing to establish the earlier date of conception, the next date is that of April, 1901, at which time also it would seem that Vogel embodied his completed idea in a machine and reduced it to practice. Whether it amounted to a complete reduction to practice is, however, immaterial because of the conclusion reached in respect of Burson's claim to earlier conception, which also antedates Vogel's alleged date, and to reduction to practice.

There was very great delay on the part of Burson in filing his application for a patent, but it does not appear that he suppressed or intended to conceal knowledge of his invention after

its reduction to practice. The Burson Knitting Company was engaged in the manufacture of stockings and other knit goods on a large scale, and used the stripping machines in the course thereof. Burson testified that it was the policy of the company not to patent machines used in work in its own factory. This is, perhaps, not an unusual practice on the part of manufacturers of products by the use of machines. Whether so or not, it does not amount to such a concealment of the invention, after reduction to practice, as to subordinate his right to a later discoverer, under the rule governing in *Mason* v. *Hepburn,* 13 App. D. C. 86, 95. See *Trissel* v. *Thomas,* 23 App. D. C. 219, 223. Moreover, Vogel, claiming to have conceived the invention July 8, 1900, did not construct a machine for use until April, 1901. Having constructed it and used it in manufacture in April, 1901, he delayed application for patent until May 28, 1902; and it was not until June, 1903, that he made an arrangement with a manufacturer to build machines and put them on the market.

Whether Burson's use of his machine in his factory for more than two years before applying for a patent amounted to such public use within the meaning of sec. 4886, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 3382, as to bar his right to a patent, is not a question which can be raised in this case, which involves priority of invention as between him and Vogel. The question is one for the consideration of the Commissioner on the final allowance of a patent.

Burson, having been shown, as we view the evidence, to have been the first to conceive the invention, as well as to reduce it to practice, is entitled to the award of priority. The decision of the Commissioner must therefore be reversed. It is so ordered, and the clerk will certify this decision to the Commissioner of Patents as the law requires.          *Reversed.*

A petition for a rehearing by the appellee, filed April 19, 1907, was denied May 7, 1907.